IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| TOMMY NEAL GINN, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>NEIGHBORHOOD IMPROVEMENT PROJECT, INC. D/B/A MEDICAL ASSOCIATES PLUS,<br><br>Defendant. | Civil Action No.<br>____________________<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

COMES NOW, Tommy Neal Ginn, M.D. ("Plaintiff" or "Dr. Ginn"), by and through his undersigned counsel, and files this, his Complaint, and shows the Court as follows:

## **NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages and reasonable attorney fees against Defendant Neighborhood Improvement Project, Inc. d/b/a Medical Associates Plus ("Defendant" or "MAP") for violations of his rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and

Section 510 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1140 ("ERISA") and breach of contract.

2.

This action challenges Defendant's decision to terminate Plaintiff's employment after he disclosed to Defendant's senior leadership that he had been diagnosed with a chronic lung disease and that one of his newly prescribed medications would be expensive. Defendant terminated Plaintiff because of his disability, in violation of the ADA, and for the purpose of interfering with his attainment of benefits under Defendant's self-insured employee benefit plan, in violation of Section 510 of ERISA.

**<u>JURISDICTION AND VENUE</u>**

3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq., and Section 510 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1140. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(4), which provides for jurisdiction in actions to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights. This Court has supplemental

jurisdiction over Plaintiff's state-law breach of contract claim pursuant to 28 U.S.C. § 1367(a), because that claim is so related to Plaintiff's federal claims that it forms part of the same case or controversy.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff was employed by Defendant, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, within this judicial district and division.

**ADMINISTRATIVE PROCEDURES**

5.

Plaintiff has fulfilled all conditions precedent necessary to proceed with his cause of action under the ADA. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 410-2026-11286, alleging disability discrimination in connection with his termination. The EEOC issued a Notice of Right to Sue on August 10, 2026, and Plaintiff timely files this Complaint within ninety (90) days of his receipt of that Notice.

6.

With respect to his claim under Section 510 of ERISA, any attempt by Plaintiff to exhaust the internal administrative remedies of Defendant's employee benefit plan would be futile and would provide an inadequate remedy. Plaintiff's

Section 510 claim challenges Defendant's decision to terminate his employment to interfere with his attainment of benefits, not a denial of a claim for benefits, and the plan's internal claims procedures are not designed to and cannot redress such a claim.

**PARTIES**

7.

Plaintiff Tommy Neal Ginn, M.D. is a citizen of the United States and a resident of Georgia and is subject to the jurisdiction of this Court.

8.

Defendant Neighborhood Improvement Project, Inc. d/b/a Medical Associates Plus is a Georgia non-profit corporation and a Federally Qualified Health Center that provides health care services in Richmond County, Georgia, with its principal place of business located at 2467 Golden Camp Road, Augusta, GA 30906. At all times material hereto, Defendant has conducted business within this District and Division.

9.

During all times relevant hereto, Defendant has been an employer engaged in an industry affecting commerce and has employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current and

preceding calendar years. Defendant is therefore an "employer" as defined under the Americans with Disabilities Act, 42 U.S.C. § 12111(5).

10.

At all times relevant to this action, Defendant sponsored and maintained a self-insured employee benefit plan, including health and pharmacy benefits, that is an employee welfare benefit plan within the meaning of ERISA, and Plaintiff was a participant in that plan.

11.

Defendant may be served with process by delivering a copy of the summons and complaint to its HR Director, Tracy Gillette, at its principal place of business, 2467 Golden Camp Road, Augusta, GA 30906.

## **FACTUAL ALLEGATIONS**

12.

On February 2, 2024, Plaintiff and Defendant entered into a written employment agreement. Pursuant to that agreement, Plaintiff began his employment with Defendant on February 12, 2024, as Chief Medical Officer ("CMO") and OB/GYN physician, with an annual salary of $300,000.

13.

As CMO, Plaintiff was responsible for supervising and evaluating MAP's medical practitioners, developing clinical protocols and quality-assurance measures, overseeing medical-records procedures, and collaborating with the Chief Executive Officer and other senior leadership on clinical matters. Plaintiff's employment agreement further provided that he would render OB/GYN services to MAP patients as required from time to time.

14.

The employment contract provided that Defendant could terminate Plaintiff's employment with thirty days' notice. The contract further provided that, if Defendant terminated Plaintiff for certain alleged failures, including failure to meet performance or productivity standards, Defendant would first provide written notice specifying the alleged failure and a thirty-day opportunity to cure.

15.

Throughout his employment, Plaintiff performed his job well. He received no negative performance evaluations, no disciplinary action, and no performance improvement plan.

16.

Not long after Plaintiff began his employment, Defendant learned that it would undergo an Operational Site Visit by the Health Resources and Services Administration ("HRSA") in January 2025.

17.

As CMO, Plaintiff worked diligently to prepare Defendant for that audit. In January 2025, Defendant passed the HRSA Operational Site Visit with 100% compliance and no deficiencies, and Plaintiff was praised by HRSA's clinical reviewer for his area of the audit.

18.

Beginning in January 2025, Plaintiff developed a persistent cough and was referred to and evaluated by Defendant's in-house pulmonologist, Dr. Alan DeAngelo.

19.

In early October 2025, Plaintiff was evaluated further by Dr. DeAngelo. and was found to have decreased oxygen levels when he walked. On October 3, 2025, Plaintiff met with Defendant's Chief Executive Officer, J.R. Richards, and disclosed that he would use supplemental oxygen when walking. Plaintiff told Mr. Richards that he remained able to perform his job and discussed practical adjustments to

certain work activities, including moving more slowly when needed and conducting some meetings remotely.

20.

In January 2026, Plaintiff took on responsibilities in addition to those already established for his CMO role. Specifically, the added responsibility was the supervision of three mid-level providers of women's health care. Plaintiff discussed the additional responsibility with Mr. Richards, including the steps needed to implement the supervision arrangement. Mr. Richards approved the arrangement and directed Plaintiff to proceed.

21.

Plaintiff underwent an outpatient cardiac stent procedure on February 17, 2026, returned to work within days, and continued performing light CMO duties while out recovering from the cardiac procedure.

22.

A Senior Staff Meeting was held on February 25, 2026. At this staff meeting, Plaintiff received no notice of any performance deficiency. During this meeting, Plaintiff's CMO Report reflected that protocols were in process for him to begin supervision of the three women's health mid-level providers.

23.

On February 28, 2026, Plaintiff attended the MAP Board's strategic meeting while using crutches and supplemental oxygen. Mr. Richards observed Plaintiff using those supports at work, told Plaintiff that he did not like seeing him that way, and directed him to go home and rest.

24.

On March 17, 2026, Plaintiff was seen by a pulmonologist at Wellstar MCG, who informed him that he had interstitial lung disease, a chronic condition, and prescribed several medications, including an expensive anti-fibrotic medication.

25.

On the morning of March 18, 2026, Plaintiff disclosed his chronic lung disease diagnosis to Defendant's Chief Operations Officer, Jennifer Clark and explained that he remained able to perform his job.

26.

Immediately thereafter, at a standing meeting of the senior management team, Plaintiff disclosed his diagnosis to Chief Financial Officer Wesley Wood, Chief Operations Officer Jennifer Clark, Chief of Administrative Services Kristen Holt, and HR Director Tracy Gillette. Plaintiff told them that he had a chronic lung disease that would require ongoing medication. Chief Financial Officer Wesley Wood

administers the pharmacy benefit of Defendant's self-insured health plan. Plaintiff told Mr. Wood directly that one of the medications would be expensive. Mr. Wood responded, "It's cheaper than a hospital."

27.

The same afternoon, March 18, 2026, Mr. Richards' administrative assistant notified Plaintiff that a one-on-one meeting scheduled between Mr. Richards and Plaintiff for 4:00 p.m., was canceled by Mr. Richards.

28.

On March 19, 2026, after Plaintiff disclosed his chronic diagnosis and the anticipated cost of his medication to senior leadership, HR Director Tracy Gillette terminated Plaintiff's employment for cause, effective immediately.

29.

The termination letter, signed by Mr. Richards, stated only that Plaintiff had "consistently failed to comply with the terms and conditions of your employment and have not met MAP's stated goals and objectives." The letter did not identify any specific deficiency, missed metric, or particular act or omission by Plaintiff.

30.

Orally, Ms. Gillette told Plaintiff that the termination was because he was not seeing patients two days per week and because the department was not making money. Plaintiff was escorted out of the building and his employment ended immediately.

31.

Plaintiff was qualified for his position and able to perform the essential functions of his job. Prior to his termination, Plaintiff received no warning, counseling, discipline, or performance improvement plan indicating that his employment was in jeopardy.

32.

Although Defendant purports to provide legitimate, non-discriminatory reasons for Plaintiff's termination, these reasons are pretextual.

33.

Plaintiff's termination was causally connected to his disability and to the anticipated cost of his medical care under Defendant's self-insured employee benefit plan.

## CLAIMS FOR RELIEF

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

34.

Plaintiff re-alleges and incorporates paragraphs 12 through 38 as if fully set forth herein.

35.

Plaintiff has a disability within the meaning of the ADA. His chronic interstitial lung disease is a physical impairment that substantially limits one or more major life activities, including breathing, and requires the use of supplemental oxygen. In the alternative, Defendant regarded Plaintiff as having such an impairment.

36.

Plaintiff was qualified for his position as Chief Medical Officer and OB/GYN physician and was able to perform the essential functions of his job, as evidenced by his consistent performance and his lack of any negative evaluations, discipline, or performance improvement plans.

37.

Defendant took adverse employment action against Plaintiff, terminating his employment after he disclosed his chronic lung disease diagnosis to Defendant's senior leadership.

38.

Defendant terminated Plaintiff because of his disability, and/or because it regarded him as disabled, in violation of the ADA, 42 U.S.C. § 12112(a).

39.

Defendant's stated reasons for terminating Plaintiff are pretextual.

40.

As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered economic and non-pecuniary damages, including loss of wages, benefits, and employment opportunities, and mental and emotional distress.

41.

Defendant's actions were undertaken with malice or with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

**COUNT II: VIOLATION OF SECTION 510 OF ERISA**

**INTERFERENCE WITH ATTAINMENT OF BENEFIT RIGHTS**

**(29.S.C. § 1140)**

42.

Plaintiff re-alleges and incorporates paragraphs 12 through 38 as if fully set forth herein.

43.

At all relevant times, Plaintiff was a participant entitled to protection under an employee benefit plan sponsored and maintained by Defendant, including a self-insured health and pharmacy benefit plan, and was qualified for his position.

44.

Section 510 of ERISA prohibits an employer from discharging a plan participant for the purpose of interfering with the attainment of any right to which the participant may become entitled under an employee benefit plan.

45.

Defendant's self-insured health and pharmacy benefit plan meant that the cost of Plaintiff's medical care and medications was borne directly by Defendant's own assets.

46.

Plaintiff disclosed his chronic, ongoing medical condition and the anticipated

cost of his medication directly to the Chief Financial Officer who administers the plan's pharmacy benefit, and Defendant terminated Plaintiff's employment thereafter.

47.

Defendant discharged Plaintiff under circumstances giving rise to an inference of discrimination and did so with the specific intent to interfere with Plaintiff's attainment of benefits under the plan. Interference with Plaintiff's benefit rights was a motivating factor in Defendant's decision, which was directed at Plaintiff's benefit rights in particular and was not merely an incidental loss of benefits resulting from his discharge.

48.

Defendant's conduct constitutes a violation of Section 510 of ERISA, 29 U.S.C. § 1140.

49.

As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered loss of wages, benefits, and other financial losses, and is entitled to equitable relief and other appropriate remedies under ERISA.

## COUNT III: BREACH OF CONTRACT

50

Plaintiff re-alleges and incorporates paragraphs 12 through 35 as if fully set forth herein.

51.

The Agreement is a valid and enforceable written contract between Plaintiff and Defendant, supported by adequate consideration.

52.

Plaintiff performed his obligations under the Agreement.

53.

Defendant's March 19, 2026, termination letter invoked Section 3.2 of the Agreement and stated that Plaintiff had "consistently failed to comply with the terms and conditions of [his] employment and ha[d] not met MAP's stated goals and objectives." Those stated grounds fall within Sections 3.2.1 and 3.2.2 of the Agreement.

54.

Under Section 3.3, before terminating Plaintiff on those grounds, Defendant was required to give Plaintiff written notice specifying the nature of the alleged breach or failure and a thirty-day opportunity to cure.

55.

Defendant gave Plaintiff no written notice of any alleged breach or failure and no opportunity to cure. It terminated his employment effective immediately.

56.

In the alternative, to the extent Defendant terminated the Agreement without cause, Section 3.2 required Defendant to give Plaintiff thirty days' notice, which Defendant did not provide. Defendant breached the Agreement.

57.

As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including lost compensation and benefits, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendant as follows:

(a) A trial by jury as to all triable issues of fact;

(b) Back pay, front pay, and other compensatory damages for lost wages and benefits;

(c) General damages for mental and emotional suffering caused by Defendant's discriminatory conduct;

(d) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in violation of Plaintiff's rights under the ADA;

(e)Equitable relief, including recovery of benefits and other appropriate relief, for Defendant's violation of Section 510 of ERISA;

(f) Declaratory relief establishing that Defendant violated Plaintiff's rights under the Americans with Disabilities Act and Section 510 of ERISA;

(g) Injunctive relief ordering Plaintiff's reinstatement to his former position, or front pay in lieu thereof, and prohibiting Defendant from engaging in further unlawful conduct of the type described herein;

(h) Reasonable attorney's fees and expenses of litigation;

(i) Prejudgment and post-judgment interest at the maximum rate allowed by law;

(j) All costs of this action;

(k) Damages for breach of contract, including lost compensation and benefits available under the employment contract; and

(l) Such other and further relief as this Court deems just and proper.

Respectfully submitted this 29th day of October 2026.

**BARRETT & FARAHANY**

s/ *Detra Hicks*
Detra Hicks
Georgia Bar No. 982460

*Counsel for Plaintiff Tommy Neal Ginn, M.D.*

2921 Piedmont Road,
Atlanta, GA 30305
detra@justiceatwork.com